**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SHANE BAKER** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-01719** |
| **WORCESTER COUNTY, MARYLAND, et al.** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * *

## MEMORANDUM

Two motions are now pending in this case. Defendants State of Maryland and Sheriff Matthew Crisafulli, in his official capacity ("State Defendants"), filed a motion to dismiss pursuant to Fed. R. Civ. P.12(b)6), or in the alternative, a motion for summary judgment. (ECF No. 19.) Defendant Worcester County ( "County") also filed a motion to dismiss under Rule 12(b)(6). (ECF No. 22.) For the reasons stated below, the State Defendants' Motion will be granted in part and denied in part, and the County's Motion will be granted.

## I. FACTUAL BACKGROUND

Plaintiff Shane Baker worked as a Deputy Sheriff in the Judicial Services Division at the Worcester County Sheriff's office under the supervision of Lieutenant Bethany Ramey. (ECF No. 1 at ¶¶ 4, 18–20.) Baker alleges that, in December 2021, "Ramey initiated personal and sexualized conduct toward [him] while on duty, including repeated flirting and physical advances in the workplace." (*Id.* at ¶ 22.) When Baker confronted Ramey, she allegedly doubled down and continued the inappropriate behavior at work and "during duty-related interactions." (*Id.* at ¶¶ 23–24.) Baker claims that he submitted to Ramey's overtures and started a sexual relationship. (*Id.*)

The relationship lasted for three years. (*Id.* at ¶ 36.) In the interim, Baker claims that he attempted to "end the relationship multiple times," but that Ramey "repeatedly pressured" him to continue their liaison and urged him to keep it a secret from their families. (*Id.* at ¶¶ 26–28.) Baker relented, allegedly because "Ramey had authority over Plaintiff's assignments, discipline, and career advancement" such that Baker feared reprisal were he to call it off. (*Id.* at ¶¶ 25, 28.)

Baker claims that the long relationship was never consensual and that any "apparent consent" was "vitiated" because the relationship took place in a chain of command and under the fear of professional consequences that he could not overcome. (*Id.* at ¶¶ 29–35.) He also claims that this involuntary sexual relationship was "known or widely suspected" within the department, yet the Defendants failed to investigate or otherwise implement proper mechanisms to prevent the abuse. (*Id.* at ¶¶ 51–53.) That is, until December 2024 when Baker confronted Ramey to end the relationship and, ultimately, disclosed the relationship to Ramey's superior. (*Id.* at ¶¶ 39–40.)

Following disclosure, Baker and Ramey's workplace relationship triggered an investigation conducted by the Ocean City Police Department, an outside law enforcement agency. (*Id.* at ¶ 43.) During the investigation, Baker claims that Defendants subjected Baker to interviews in the presence of command staff, "exacerbating reputational harm." (*Id.* at ¶ 44.) And Baker alleges that Defendants placed him "on administrative leave," stripping him of his police powers while treating Ramey more favorably. (*Id.*) Ultimately, due to the alleged poor working conditions and hostile environment caused by the investigation, Baker claims that he was "compelled to resign" lest he experience "further retaliation, humiliation, and potential discipline." (*Id.* at ¶ 63.)

Baker brings four claims against the Defendants: a Title VII sexual harassment claim, alleging both a hostile work environment and *quid pro quo* harassment (Count I); a Title VII

retaliation claim (Count II); a Maryland Fair Employment Practices Act ("FEPA") claim (Count III); and a negligent supervision and retention claim (Count IV). (*Id.* ¶¶ 75–108.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. This motion is designed "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). So, when considering a motion to dismiss, the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

To survive dismissal, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678–79. Nor do "'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Generally, the Court's review under Rule 12(b)(6) is limited to the allegations in the complaint as well as documents incorporated into it or properly attached to as exhibits. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). So, where the moving party attaches documents to their motion

to dismiss, a court may usually consider them only if it converts the motion to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

A court may consider a movant's attached documents under the 12(b)(6) standard, however, when they "are integral to the complaint and authentic [i.e., not in dispute]." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). To be integral, the "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, Civ. No. 21-1025, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citation omitted). As this Court has put it, a document is integral only if its "very existence, and *not the mere information it contains*, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted).

## III. DISCUSSION

### A. Claims Against the State of Maryland and Sheriff Matthew Crisafulli

State Defendants move to dismiss all claims against them pursuant to Rule 12(b)6), or in the alternative, move for summary judgment under Rule 56. (ECF No. 19.)

#### 1. The Court will not consider the investigation-related documents in State Defendants' Motion.

State Defendants first ask the Court to use its discretion under Rule 12(d) to consider matters outside of the complaint in its 12(b)(6) determination. (ECF No. 19-1 at 9–10.) The documents that State Defendants attach to their Motion are mostly related to the Ocean City Police Department's investigation of Baker. (*Id.*) State Defendants argue that the Court should consider the attached investigative record because it is "integral" to Baker's claims and "undisputed." (ECF No. 19-1 at 11) (citing *Goines*, 822 F.3d at 166).) They argue the documents are "integral" because

they form the "predicate administrative record on which the lawsuit is built." (*Id.*) And they are "undisputed" because they were prepared contemporaneously to the investigation by neutral parties, like court reporters and independent investigating officers. (*Id.* at 11–12.)

The court finds otherwise. These documents are not like the "fraudulent document in a fraud action" or the contract in a breach of contract dispute, the very existence of which give rise to a lawsuit. *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010). Indeed, the existence of the investigative reports does not give rise to Baker's claims. Documents are not integral if they "simply provide competing accounts of the dispute, rather than being the source of the action." *Id.* at *4.

District courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to one of summary judgment], or to reject it or simply not consider it." *Sager v. Housing Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004)). But conversion to a motion for summary judgment is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). There has been no discovery in this case, so the Court will not convert the motion. The Court disregards State Defendants' Exhibits and considers only the factual allegations in Baker's Complaint.[1]

---

[1] State Defendants also attached Baker's EEOC charges and the EEOC's notification of Baker's right to sue (Exs. 9, 10) to their Motion to Dismiss. These are public records already included by Baker in his Complaint, so the Court may properly consider them at the motion to dismiss stage. But they add little to the Court's analysis.

**2. Counts I and II: Sexual Harassment and Retaliation under Title VII**

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that [he] reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 326–27 (4th Cir. 2018). The Court refers to "the former as the anti-discrimination provision and the latter as the anti-retaliation provision." *Id.* Baker alleges that State Defendants violated both provisions.

**a. State Defendants are not shielded from vicarious liability for sexual harassment under the *Faragher-Ellerth* Defense.**

State Defendants invoke the "*Faragher-Ellerth*" defense as a shield against liability for Baker's anti-discrimination claim. (ECF No. 19-1 at 20.) The *Faragher-Ellerth* defense "allows an employer to escape vicarious liability for hostile work environment claims under Title VII" on the theory that they are not responsible for the tortious conduct of their employee. *Hammond-Thompson v. Temple View Cap.*, Civ. ABA-23-1502, 2026 WL 850510, at *6 (D. Md. Mar. 27, 2026) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)). "Before reaching the defense, courts must first determine whether the company took a tangible employment action against the employee. The defense is unavailable if the employer has done so." *Id.* (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). If the employer took a tangible employment action against the employee bringing a claim, they may be held vicariously liable for "aid[ing]" the alleged "workplace tortfeasor[]." *Ellerth*, 524 U.S. at 744. But when "no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.* at 745.

A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761. A "discharge, demotion, or undesirable reassignment" are also tangible employment actions. *Faragher*, 524 U.S. at 808. "A tangible employment action in most cases inflicts direct economic harm." *Ellerth*, 524 U.S. at 761. But a tangible employment action need not be "adverse" to the employee. *Martinez v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. PJM 19-0169, 2020 WL 4926610 at *7 (D. Md. Aug. 21, 2020) (interpreting *Faragher* and *Ellerth*).

Here, Baker alleged that his relationship with Ramey "culminated in a tangible employment action, including [Baker's] placement on administrative leave, loss of duties and standing, and constructive discharge." (ECF No. 1 at ¶ 71.) State Defendants contend that the *Faragher-Ellerth* defense still applies because the administrative leave was not an "adverse action" taken because of Baker's sex or his relationship with Ramey, but rather was a "content-neutral, even-handed response to [Baker's] own disclosure." (ECF No. 19-1 at 20.)

State Defendants' argument is unavailing. A tangible employment action need not be "adverse" to demonstrate that an employer had the power to aid a workplace tortfeasor. *Martinez*, 2020 WL 4926610 at *7; *see also Jin v. Metropolitan Life Ins. Co*, 310 F.3d 84, 93 (2d Cir. 2002) (holding that use of the term "adverse" in the context of a tangible employment action "was contrary" to the language in *Faragher* and *Ellerth*). It need only be akin to a "significant change in employment status" such as a "reassignment with significantly different responsibilities." *Ellerth*, 524 U.S. at 761. Baker alleged that he was put on leave, removed from his daily work as a deputy sheriff, and stripped of his police powers. (ECF No. 1 at ¶¶ 46–47.) Under the plain meaning of *Faragher* and *Ellerth*, these allegations plausibly describe a tangible employment

action because the leave altered both Baker's "responsibilities at work" and his "employment status." *McKinney v. G4S Gov't Sols., Inc.*, 711 F. App'x 130, 135 (4th Cir. 2017).

To be sure, Baker was put on paid leave and does not allege the economic harm that typically flows from tangible employment actions. *Ellerth*, 524 U.S. at 761. And the Fourth Circuit has found that administrative leave may not amount to a tangible employment action where the plaintiff did not "suffer[] any pecuniary loss." *Crockett v. Misson Hosp., Inc.* 717 F.3d 348, 356 (4th Cir. 2013). But *Crockett* is distinguishable. There, the plaintiff was placed on brief leave pending investigation but did not give evidence that she was stripped of pay, duties, or authority. *Id.* Baker, by contrast, alleges that he was removed from his work as a deputy sheriff and stripped of his police powers. That change goes to the core of his position. Moreover, *Crockett* was decided at the summary judgment stage on a developed record that the Court does not have here. *Id.*

State Defendants' contention that the leave was a neutral response to Baker's disclosure raises a separate causation question. "Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 182 (4th Cir. 1998). But taking the facts in the light most favorable to Baker, he shows that his administrative leave was tied to the alleged harassment because he alleges that, despite being told that he "was not the subject of the investigation," he was treated less favorably than Ramey after disclosure, "reinforcing the perception that [Baker] was being blamed." (ECF No. 1 at ¶¶ 57–59.)

On a close call, the Court finds that Baker has adequately pleaded a tangible employment action and so the *Faragher-Ellerth* defense does not apply. Importantly, however, even if the Court found otherwise, the *Faragher-Ellerth* defense would not yet be appropriate. To escape liability, the employer must also prove by a preponderance of the evidence that "(1) it exercised reasonable care to prevent and correct any harassing behavior; and (2) [the plaintiff] unreasonably

failed to take advantage of the preventive or corrective opportunities that the employer provided." *McKinnish v. Brennan*, 630 Fed. Appx. 177, 183 (2015) (4th Cir. 2015) (citing *Ellerth*, 524 U.S. at 765). State Defendants do not meet their burden because they cite only their own investigatory documents that the Court does not review at the motion-to-dismiss stage. (ECF No. 19-1 at 19–20.) Baker's allegations survive the Faragher-Ellerth defense in the current posture.

**b. Baker adequately states a claim for Sexual Harassment.**

"Courts have long recognized that sexual harassment can be a violation of Title VII." *Martinez*, 2020 WL 4926610, at *4. There are two types of sexual harassment claims under Title VII: "harassment that creates an offensive or hostile work environment and *quid pro quo* sexual harassment, where sexual consideration is demanded in exchange for job benefits." *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 745 (D. Md. 2003). Baker alleges both types of sexual harassment and State Defendants challenge both.

*Hostile work environment.* To establish a hostile work environment, Baker must plausibly allege: (1) that he experienced unwelcome conduct, (2) based on his sex, (3) sufficiently severe or pervasive to alter his conditions of employment and create an abusive environment, and (4) that is imputable to the employer. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). State Defendants contend that Baker failed to sufficiently allege the first and third elements.

The first element asks whether the plaintiff "by [his] conduct indicated that the alleged sexual advances were unwelcome, not whether [his] actual participation in sexual intercourse was voluntary." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986). Unwelcomeness "is not a high hurdle" for plaintiffs to overcome. *Strothers*, 895 F.3d at 328–29. For example, an employee can prove unwelcome conduct simply by "voicing [his] objection to the alleged harasser or to the employer." *Id.* Baker alleges that he did just that: he objected to his alleged harasser, Ramey,

and eventually reported the misconduct to her employer. (ECF No. 1 at ¶¶ 39–40.) State Defendants argue that the sexual relationship between Baker and Ramey was "welcome" based on evidence in the investigatory reports, but these are factual matters for a later stage of litigation.

The third element of a hostile workplace claim requires that the offending conduct be sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment. *Okoli v. City Of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). This test is both objective and subjective, asking whether "the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citation and internal quotation marks omitted).

State Defendants argue, again based on the investigatory reports, that Baker and Ramey's relationship was "consensual and loving" and did not intrude on the workplace. (ECF No 19-1 at 18.) Taking Baker's allegations as true, he sufficiently alleges otherwise. Baker alleges that his direct supervisor continually used "emotional pressure" and "warnings" about consequences to his career and family to trap him in a three-year non-consensual sexual relationship. (ECF No. 1 at ¶ 28, 31.) That is not an "ordinary tribulation[] of the workplace." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (citation omitted). Rather, Ramey's frequent alleged harassment and threats to Baker's career had the "net effect" of an abusive environment that would detract from any reasonable employee's work performance. *Strothers*, 895 F.3d at 332. Baker adequately states a claim for a sexual harassment based on a hostile work environment theory.

*Quid pro quo.* Baker also brings a claim under the *quid pro quo* theory of sexual harassment. Baker must prove five elements, the first three of which overlap with the hostile work environment inquiry: (1) the employee belongs to a protected group (his gender), (2) was subject to unwelcome sexual harassment, (3) based upon sex, (4) the employee's reaction to the

harassment "affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment," and (5) the employer "knew or should have known of the harassment and took no effective remedial action." *Okoli*, 648 F.3d at 222.

State Defendants dispute that the fourth factor applies because Ramey "never conditioned any employment benefit on continuation of the relationship." (ECF No. 19-1 at 22.) Not so. Baker alleges that Ramey "warned [Baker] that disclosure would negatively impact . . . his professional standing, reinforcing that he should remain silent." (ECF No. 1 at ¶ 31.) Taken as true, that warning is enough to tie Baker's reaction to Ramey's overtures to the terms and conditions of his employment. Baker adequately states a claim for sexual harassment on a *quid pro quo* theory.

**3. Count II: Retaliation under Title VII**

"Title VII, in addition to prohibiting discrimination, prohibits employers from retaliat[ing] for the employee's opposing the employer's illegal discrimination practices or participating in Title VII enforcement proceedings." *Hammond-Thompson*, 2026 WL 850510, at *13 (citation and internal quotation marks omitted). Without direct evidence, a plaintiff may prove their employer's retaliation via the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973), by showing that "(1) the plaintiff engaged in a protected activity . . . ; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli*, 648 F.3d at 223.

Under the first element, Baker claims that he engaged in protected activity by reporting the conduct underlying his anti-discrimination claim: "that his supervisor had engaged in a coercive sexual relationship and abused her authority over him." (ECF No. 1 at ¶¶ 40, 87.) State Defendants again dispute whether Ramey's conduct was unwelcome, arguing that "voluntary disclosure of one's own affair, made for personal reasons" does not amount to protected activity. (ECF No. 19-

1 at 24.) As discussed, the truth of Baker's allegations regarding Ramey's sexual overtures are factual disputes not appropriate for a motion to dismiss. Baker satisfies this element.

Under the second element, Baker claims that two acts constitute materially adverse employment actions: Defendants placing him on administrative leave, and Defendants creating the poor working conditions that compelled his resignation. (ECF No. 1 at ¶¶ 46–47.) Baker has not sufficiently alleged that either of these employment actions were material and adverse.

The standard for a *material adverse action* under Title VII's anti-retaliation provision is different than that of a *tangible employment action* under the *Faragher-Ellerth* defense. As noted, a "tangible employment action need" not be "adverse" but merely must alter the employee's "responsibilities at work" and "employment status." *McKinney*, 711 F. App'x at 135. In contrast, an employer's "action will constitute an adverse employment action if a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from [making] or supporting a charge of discrimination." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (citation and internal quotations omitted). An employer's action is not materially adverse where it is more akin to the "petty slights" and "minor annoyances" of the workplace that do not deter employees from reporting misconduct. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

First, Baker argues that his being placed on paid administrative leave and stripped of his police powers amounts to a materially adverse action. (ECF No. 1 at ¶¶ 46–47.) But Baker does not provide any facts in the Complaint showing that the prospect of paid administrative leave would deter a "reasonable employee" from reporting misconduct. *Thorn*, 766 F. Supp at 603.

Courts in the Fourth Circuit have consistently held that mere placement on administrative leave, without more, does not constitute an *adverse* employment action for purposes of a Title VII

discrimination claim. *Credle v. Virginia Community College System*, Civ. No. DJN 2-24-233, 2025 WL 27827 (E.D. Va. Jan. 3, 2025), *aff'd* No. 24-1072, 2026 WL 509313 (4th Cir. Feb. 23, 2026) (collecting cases). Baker alleges in conclusory fashion that the leave "damaged his reputation within the department and signaled potential disciplinary action." (ECF No. 1 at ¶ 47.) He does not provide the factual matter necessary at the pleading stage to back up his claims, for example that the leave also led to lower pay, a permanent mark on his record, or affected his ability for promotion. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) ("The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action. There must be some significant detrimental effect . . . .")

Second, Baker claims that his resignation can be imputed to his employers as a "constructive discharge" due to the "intolerable working conditions" created by the investigation into his and Ramey's relationship. (*Id.* at ¶ 55–65.) An employee can convert their voluntary resignation into an adverse action by their employer if the "employer deliberately makes [their] working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (citation omitted), *abrogated on other grounds by Green v. Brennan*, 578 U.S. 547 (2016). There is a high bar for "the objectively intolerable working conditions necessary to prove a constructive discharge." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (finding that an employee who was berated, yelled at, poorly evaluated, and forced to work with an injured back was not constructively discharged).

Baker resigned from his position on December 20, 2024, a few days after the investigation started. (ECF No. 1 at ¶ 64.) Baker provides only conclusory statements to allege that intolerable working conditions forced his hand. (ECF No. 1 at ¶ 55.) He broadly states that "supervisory coercion, compelled secrecy, retaliatory investigation, professional isolation, and reputational

harm" all combined to create "objectively intolerable" conditions. (*Id.* at ¶ 60.) But Baker offers no facts to render these statements plausible. Moreover, even if Baker could show that the environment at the Sheriff's office was intolerable, he provides no evidence that his employer created these conditions to force Baker to resign. *See Booz-Allen*, 383 F.3d at 187. Although Baker need not state his retaliation claim with exacting detail, his recital of Title VII's anti-retaliation provisions "supported by mere conclusory statements" does not suffice." *Iqbal*, 556 U.S. at 678–79.

Baker has not sufficiently alleged the elements required in a retaliation claim under Title VII and so Count II will be dismissed against all defendants.

**4. Count III and IV: Remaining claims under Maryland state law**

Baker alleges that the same events that give rise to his actions under Title VII also constitute a violation of the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't ¶¶ 20-601 to 20-611 ("FEPA"), as well as negligent supervision and retention under Maryland law. State Defendants argue that these claims are barred by the Eleventh Amendment. Baker does not dispute that argument, so the Court addresses this issue only briefly. Counts III and IV will be dismissed against State Defendants.

The Eleventh Amendment "establish[es] that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (citations omitted). Although states often waive their immunity against suit, such waivers are only appropriate where they are stated by express language or overwhelming implication. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The party seeking immunity has the burden of proof to establish that a state has not waived its immunity. *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019).

The Eleventh Amendment bars Baker's FEPA claim (Count III) and his negligent supervision and retention claim (Count IV) against Defendant the State of Maryland. *See Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019) (finding that Maryland has not waived its immunity with respect to FEPA claims in federal court specifically); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397 (4th Cir. 1990) (concluding that the "waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts"); *Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 775–76 (D. Md. 2003) (dismissing a common law negligent hiring claim in federal court as barred by the Eleventh Amendment).

State Defendants also argue that the Eleventh Amendment bars Count III and IV against Sheriff Crisafulli, in his official capacity. Indeed, a "suit against the state officials acting in their official capacities is a suit against the State." *Weller*, 901 F.2d at 398. But county officials are not agents of the state and so are not automatically subject to Eleventh Amendment protections. *Santos v. Frederick Cnty. Bd. of Commissioners*, 346 F. Supp. 3d 785, 798 (D. Md. 2018). State Defendants rely on a case from this district examining whether the State's immunity to FEPA claims also applies to a sheriff as an "agent of the State." *Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *21 (D. Md. Mar. 25, 2021). Because the *Ensor* court found that the sheriff in that case was a state official, *id.* at 25, State Defendants argue that Sheriff Crisafulli is also "an elected State constitutional officer" so the "same result follows." (ECF No. 19-1 at 31.)[2]

[2] Normally, such conclusory statements by State Defendants would not be enough to carry their burden. Maryland does not follow a categorical rule about sheriffs as state officials but "employs a functional, context-specific analysis when determining whether an entity is properly characterized as State, county, or independent for a particular purpose." *Penman v. Harford C'nty*, No. 2182, Sept. Term, 2024, 2026 WL 962246, at *8 (App. Ct. Md. Apr. 9, 2026). But two factors lead the Court to consider the Eleventh Amendment issue. First, State Defendants raise an issue of jurisdiction that the Court must consider as a threshold matter. *McCants v. Nat'l Collegiate Athletic Ass'n*, 251 F. Supp. 3d 952, 955 (M.D.N.C. 2017) ("Once asserted by the state, such immunity becomes a threshold issue that must be resolved before the court can address any of a plaintiff's claims.") Second, Baker largely concedes this issue and does not dispute in his briefing that the sheriff is a state rather than a county official. (ECF No. 24 at 20.)

The Fourth Circuit uses a four-factor test to determine whether an entity is sufficiently connected to a state for purposes of immunity: "(1) whether the state will pay a judgment against the defendant entity; (2) 'whether the entity exercises a significant degree of autonomy from the state,' (3) 'whether [the entity] is involved with local versus statewide concerns,' and (4) 'how [the entity] is treated as a matter of state law.'" *Ensor*, 2021 WL 1139760, at *22 (quoting *Lane v. Anderson*, 660 F. App'x 185, 195 (4th Cir. 2016)). The court in *Ensor* largely relied on the first and fourth factor, and this Court will do the same. *Id.* at *25.

Under the first factor, the state is responsible for "payment of associated settlements or judgment" when it comes to "personnel and administrative matters," like those related to workplace harassment. *Ensor*, 2021 WL 1139760, at *30. Under the fourth factor, "for purposes of civil liability, Maryland courts ordinarily treat sheriffs as state officials." *Id.* at 22 (collecting Maryland state cases). And this Court has often taken the same view that sheriffs are state officials in cases that involve core sheriff functions—like the staffing and misconduct here—rather than functions related to local funding or entitlement to benefits. *See id.* (collecting cases).

Sheriff Crisafulli acted pursuant to authority granted by the State when supervising personnel like Baker and Ramey, and the State will be responsible for payments of related judgments from this case. Thus, Sheriff Crisafulli acted as a state official and shares Maryland's sovereign immunity. Counts III and IV against State Defendants will be dismissed entirely.

**5. Baker is not entitled to punitive damages against State Defendants**

As a final matter, State Defendants argue that punitive damages are barred as a matter of law "against a government, government agency or political subdivision." (ECF No. 19-1). Baker concedes and withdraws his request for punitive damages. (ECF No. 24 at 22.) The request for punitive damages is dismissed.

### A. Claims Against Worcester County, Maryland

The County moves to dismiss all claims against them under Rule 12(b)(6). (ECF No. 22.) As a threshold issue, the County argues that the sheriff and his deputies are state employees, not employees of Worcester County. Thus the County cannot be held vicariously liable for conduct within the Sheriff's Office. (*Id.* at 7–9.) Because Baker has not adequately pleaded that the County is his or Ramey's joint employer, Counts I–IV will be dismissed against the County.

The County argues, and Baker concedes, that sheriffs and deputies are generally treated as state, not county, employees under Maryland law. (ECF No. 22-1 at 7; ECF No. 23 at 7) (citing *Rucker v. Hartford County*, 558 A.2d 399, 401 (1989).) But Baker retorts that *both* the state and county can be employers in this action because "the Fourth Circuit recognizes joint-employer liability under Title VII where an entity exercises sufficient control over the terms and conditions of a plaintiff's employment." (ECF No. 23 at 7.) And Baker further argues that he has pleaded sufficient facts to support an inference that the County was his and Ramey's joint employer. (*Id.*)

Baker is correct that "[m]ultiple entities may simultaneously be considered employers for the purposes of Title VII." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015). "[F]or the County to [be] liable as a joint employer, there must be some affirmative indication of the County's control over the terms and conditions of plaintiff's employment." *Ensor*, 2021 WL 1139760, at *44. Under the Fourth Circuit's *Butler* test, courts consider nine factors to determine whether a county can sufficiently control one's conditions of employment. *Butler*, 793 F.3d at 414 (stating the nine factors). The "precise contours of an employment relationship can only be established by a careful factual inquiry" under these factors, and so the issue usually is not resolved at the pleading stage. *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 727 (D. Md. 2013) (citation omitted).

But Baker has not met his burden at the pleading stage. He offers no facts to support the County's control over the terms and conditions of his or Ramey's employment, instead giving only legal conclusions. For example, Baker states that the County is "a public employer and was [Baker's] employer within the meaning of Title VII." (ECF No. 1 at ¶ 9.) Soon after, Baker states that "[a]t all relevant times, Defendants jointly controlled the terms and conditions of [Baker's] employment and functioned as his employer within the meaning of Title VII." (ECF No. 1 at ¶ 12.) Then, in place of factual allegations to prove joint control, Baker offers more conclusions: "Plaintiff began working for Defendants" (*id.* at ¶ 18); "in the Judicial Services Division" (*id.* at ¶ 19); and his relationship with Ramey took place "during work hours, including encounters in employer-controlled environments and during duty-related interactions." (*Id.* at ¶ 24). These "mere conclusory statements" cannot sustain Baker's initial pleading burden. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

Baker argues that additional facts will come in time, and so dismissal is inappropriate here. (ECF No. 23 at 8–9.) He cites several cases in support. The Court finds these cases inapposite because each involves a complaint with many more factual allegations than Baker's. For example, *in Murphy-Taylor v. Hofmann*, the court had the benefit of voluminous briefing on the issue of joint employment, including an intervenor complaint. 968 F. Supp 2d at 704. And in *Ensor*, the court recited the many specific allegations in the plaintiff's complaint that allowed the court to analyze the *Butler* factors for joint employment. 2021 WL 1139760 at *45–6. Moreover, *Ensor* had the benefit of facts in the complaint indicating that the County knew about the alleged bad conduct and took positions on it in written letters. *Id.* at *46. These factual allegations "permit[ted] the inference that the County" had "control over the terms and conditions of employment." *Id.* at *46. Finally, in *Marshall v. Anne Arundel Cnty., Md.*, the court found that the "plausible inference

that the County was plaintiff's joint employer" was predicated on the Plaintiff alleging "several of the most important factors" in the *Butler* test, including that "the County played some role in her hiring; it paid her; and it furnished her place of employment. Civ. No. ELH-18-74, 2019 WL 568676, at *9 (D. Md. Feb. 12, 2019).

To survive a motion to dismiss, Baker's Complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Twombly*, 550 U.S. at 556. Unlike in the above cases, Baker provides no facts with which the Court can even begin to infer that the County exercised control over Baker's employment. Because the County's employer status is required for vicarious and direct liability under Title VII, under the FEPA that is coextensive with Title VII, and under Maryland common law of negligent supervision and retention, the County is entitled to dismissal on this basis.

## IV. CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss (ECF No. 19) will be granted in part and denied in part. The County's Motion to Dismiss (ECF No. 22) will be granted. A separate order follows. The only surviving claim is for sexual harassment under Title VII against Defendants State of Maryland and Sheriff Matthew Crisafulli, in his official capacity (Count I).

DATED this 20 day of October, 2026.

BY THE COURT:

James K. Bredar
United States District Judge